IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AVERY F. GRAY, JR.,        )
       )
           Plaintiff,       )
       )
v.                       )        Civil Action No. 3:20-cv-937–HEH
       )
       )
WARDEN DAVID CALL, *et al.*,     )
       )
           Defendants.      )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Plaintiff Avery F. Gray, Jr. ("Plaintiff"), a Virginia inmate, proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action (ECF No. 1). The matter is proceeding on Plaintiff's Second Amended Complaint (ECF No. 44), filed on September 6, 2022.[1] Plaintiff names as Defendants: Harold W. Clarke ("Clarke"), the Director of the Virginia Department of Corrections ("VDOC"); David Call ("Call"), the Warden of Nottoway Correctional Center ("NCC"); W. Jarratt[2] ("Jarratt"), Assistant Warden of NCC; Major M. Ward ("Ward"); S. Gilbertson ("Gilbertson"), a Unit Manager; Lieutenant Ortiz ("Ortiz"); and, C. Walker ("Walker"), a Correctional Officer (collectively "Defendants").

In his Second Amended Complaint, Plaintiff raises the following claims:

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from the parties' submissions.

[2] A variety of spellings of this Defendant's name appear in the record. The Court employs the spelling of his name from his sworn declaration. (ECF No. 66-2.)

| | |
|---|---|
| Claim One | Defendants violated Plaintiff's rights under the Eighth Amendment by failing to alleviate the conditions in Plaintiff's overheated housing unit. (Second Am. Compl. ¶ 7, ECF No. 44.) |
| Claim Two | Defendants Walker and Jarratt violated Plaintiff's rights under the First and Fourteenth Amendment when they interfered with his access to the prison grievance procedure. (*Id.* ¶ 2.) |
| Claim Three | Defendants Walker and Jarratt violated Plaintiff's First Amendment rights when they retaliated against him and transferred him to Red Onion for requesting a grievance and asking to speak with a ranking officer. (*Id.*; Reply at 1–3, ECF No. 51.) |
| Claim Four | Defendants Walker and Jarratt violated Plaintiff's Fourteenth Amendment right to due process when they transferred him to Red Onion. (Second Am. Compl. ¶¶ 2–7.) |

By Memorandum Opinion and Order (ECF Nos. 52, 53) entered on February 16,

2023, the Court dismissed Claims One and Two.  The matter is before the Court on

Plaintiff's failure to serve Walker in a timely matter and the Motion for Summary

Judgment (ECF No. 65) filed by Jarratt.  For the reasons set forth below, all claims

against Walker will be dismissed without prejudice and the Motion for Summary

Judgment filed by Jarratt will be granted.

## I.  Failure to Timely Serve Defendant Walker

Federal Rule of Civil Procedure 4(m) provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

2

Pursuant to Rule 4(m), Plaintiff had ninety (90) days from the filing of the complaint to serve Defendants. Here, that period commenced on April 12, 2023.[3] By Memorandum Order (ECF No. 72) entered on September 7, 2023, the Court directed Plaintiff, within twenty (20) days of the date of entry thereof, to show good cause for his failure to serve Walker within the time required by Rule 4(m). Plaintiff has not responded. Accordingly, all claims against Walker will be dismissed without prejudice.

## II. Standard for a Motion for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

---

[3] Plaintiff had ninety (90) days to serve Walker after the Court entered a Memorandum Order (ECF No. 59) on April 12, 2023, directing the Marshal to serve Defendant Walker.

3

(quoting former Fed. R. Civ. P. 56(c), (e) (1986)).  In reviewing a summary judgment

motion, the Court "must draw all justifiable inferences in favor of the nonmoving party."

*United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, a mere *"scintilla*

of evidence" will not preclude summary judgment.  *Anderson*, 477 U.S. at 251 (quoting

*Schuylkill and Dauphin Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)).  "[T]here

is a preliminary question for the judge, not whether there is literally no evidence, but

whether there is any upon which a jury could properly proceed to find a verdict for the

party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S.

at 448) (emphasis omitted).  Additionally, "Rule 56 does not impose upon the district

court a duty to sift through the record in search of evidence to support a party's

opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)

(quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

At this stage, the Court is tasked with assessing whether Jarratt "has proffered

sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof

of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)

(emphasis added).  The facts offered by an affidavit or sworn declaration must also be in

the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4).  In this regard, the sworn

statement "must be made on personal knowledge, set out facts that would be admissible

in evidence, and show that the affiant or declarant is competent to testify on the matters

stated." *Id.*  Therefore, "summary judgment affidavits cannot be conclusory or based

upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.

4

1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (internal citation and quotations omitted).

As pertinent here, in support of his Motion for Summary Judgment, Jarratt has submitted the following: the declaration of Ortiz (Mem. In Supp., Ex. 1, ECF No. 66); the declaration of Jarratt (*Id.*, Ex. 2); the declaration of A. David Robinson ("Robinson"), the Chief of Corrections Operations for the VDOC (*Id.*, Ex. 3); the declaration of C. Claiborne, the acting Grievance Coordinator at NCC (*Id.*, Ex. 4); Jarratt's Interrogatories to Plaintiff (*Id.*, Ex. 5); and Plaintiff's Response to Jarratt's Interrogatories (*Id.*, Ex. 6). Additionally, Plaintiff has submitted his own sworn declaration.[4] (Pl.'s Decl., ECF No. 69.)

---

[4] Under the signature block in his Second Amended Complaint, Plaintiff included the following statement:

> I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

(Second Am. Compl. at 10.) This verification is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, No. 3:09-cv-582, 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011) and is substantially similar to one that the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001). As such, the Court must consider the contents of Plaintiff's Second Amended Complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3 (quoting *Walker*, 11 F. App'x at 274). Consequently, the statements therein do not constitute admissible evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

In light of the foregoing submissions and principles, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Plaintiff.

### III. Relevant Undisputed Facts

On June 28, 2020, Plaintiff was housed "in the westside lower pod of Housing Unit D" at NCC. (Mem. in Supp. ¶ 2.) At approximately 4:30 a.m., NCC lost power and began operating on generators. (*Id.* ¶ 4.) At around 7:00 a.m., the inmates in Plaintiff's housing unit were escorted to pill call. (*Id.* ¶ 6.) Upon returning from pill call around 7:30 a.m., the inmates refused to return to their assigned cells. (*Id.* ¶ 7.) Other inmates "housed in the lower pod of Housing Unit D also refused to return to their cells." (*Id.*)

Ortiz ordered the inmates to return to their cells. (*Id.* ¶ 8.) Some inmates complied, but others refused and remained in the common area of the pod. (*Id.*) "Those who refused to return to their cells stated that they were not returning to their cells because they were too hot because of the power outage." (*Id.* ¶ 9.) Ortiz explained to the "inmates that Dominion Power was onsite working to restore power." (*Id.* ¶ 10.) Ortiz further explained to them that for their safety and security they needed to return to their cells. (*Id.*) Nevertheless, the inmates refused his orders to return to their cells. (*Id.* ¶ 11.)

By this time, NCC staff had been informed by Dominion Power that it would take about eight (8) hours to restore power and that, during the process of restoring power, NCC could lose all power, including power from the generators. (*Id.* ¶ 13.)

Around 8:30 a.m., Ortiz went to the watch command office and notified Jarratt of the inmates' refusal to return to their cells. (*Id.* ¶ 14.) At 8:55 a.m., Ortiz, Jarratt, and Sgt. Jones ("Jones"), went to the control booth for Plaintiff's pod. (*Id.*) Jarratt repeatedly ordered the inmates to return to their cells. (*Id.*) Twenty-two (22) of the inmates repeatedly refused to return to their cells. (*Id.*) Jarratt, Jones, and Ortiz then returned to the command office. (*Id.* ¶ 15.)

At 10:15 a.m., Call entered Plaintiff's pod and explained to the inmates that repairs were underway and additional ice would be supplied to the pods. (*Id.*) Dominion Power informed Warden Call that it would be 3:00 or 4:00 p.m. before power was restored. (*Id.*) Ice was supplied to the inmates who had returned to their cells. (*Id.*)

At 11:15 a.m., NCC officials and VDOC officials discussed how to resolve the group demonstration in Plaintiff's pod. (*Id.* ¶ 17.) They "decided that the 22 inmates who refused to return to their cells would be transferred to Red Onion." (*Id.*) Jarratt "did not make the decision to transfer the 22 inmates to Red Onion." (*Id.*, Ex. 2 ¶ 16.) The decision to transfer these inmates "involved personnel from VDOC, [NCC], Sussex I State Prison, and Red Onion, and it involved many issues including classification, housing, and transporting inmates. Such a decision [was] made at the highest levels." (*Id.*) Specifically, "[a]fter being apprised of the situation," Robinson "approved the transfer of [Plaintiff] and the others to Red Onion State Prison because of their involvement in the group disturbance." (*Id.*, Ex. 3 ¶ 5.) Around 3:14 p.m., Plaintiff and twenty-one (21) other inmates, who had repeatedly refused to return to their cells were transported to Red Onion. (*Id.*, Ex. 2 ¶ 20.)

7

Plaintiff was charged with the institutional infraction of encouraging others to participate in a group demonstration. (*Id.*, Ex. 2 ¶ 21.) On July 20, 2020, Plaintiff was found guilty of that offense. (*Id.*)

Assistant Warden Jarratt swears:

> I did not retaliate against [Plaintiff]. During the incident, I and other officers heard the men's complaints, but the need to protect the safety of inmates and staff and to secure the prison required that they return to their cells. To the extent that we took any action that could have been deemed adverse to [Plaintiff]—such as ordering inmates to return to their cells or not provisioning those who refused to return to their cells—such actions were taken solely to secure the pod and ensure the safety of inmates and staff. Once control of the pod had been regained, ice pouches were distributed to all inmates.

(*Id.*, Ex. 2 ¶ 22.)

## IV. Analysis

### A. Retaliation

In order to survive summary judgment on a First Amendment retaliation claim, a plaintiff must establish "that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (alterations in original) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotations omitted)). In his Second Amended Complaint, Plaintiff alleged that Jarratt retaliated against him by transferring him to Red Onion when he requested a grievance and asked to speak to a ranking officer. However, Plaintiff has not introduced any evidence that he engaged in either of these activities. Rather, the summary judgment

8

record reflects that on the morning in question, Plaintiff was involved in a group protest and refused to obey direct orders to return to his cell.

The Supreme Court has emphasized that prisoners do not retain a First Amendment right to petition where "the petitioning activity is 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). In this regard, "marches or group protests" are "obviously inconsistent with imprisonment." *Id.* (quoting *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)). Furthermore, a prisoner does not retain a First Amendment right to petition that is confrontational or insubordinate, or in violation of a legitimate prison regulation. *See, e.g., Martin v. Duffy*, 977 F.3d 294, 300 ("Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment." (quoting *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004))); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (holding that prisoner's filing of grievances against prison officials in a manner that violated legitimate prison regulations and objectives and in light of his aggressive attitudes and his attempts to intimidate staff members, was not protected activity); *Davis v. Bracewell*, No. 2:08-cv-059, 2010 WL 2773341, at *3 (N.D. Ga. July 13, 2010) (finding no First Amendment claim where the plaintiff was disciplined after becoming insubordinate and refusing to obey direct orders to be quiet and stop arguing). Accordingly, Plaintiff fails to establish the first element of his retaliation claim.

Furthermore, even if one were to assume that Plaintiff engaged in protected First Amendment activity when he demanded to speak to Jarratt's superiors or requested a grievance, Plaintiff fails to demonstrate that he was retaliated against for those activities. In order to establish causation, Plaintiff must initially show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Martin*, 977 F.3d at 300. The adverse action identified by Plaintiff, was the decision to transfer him to Red Onion.[5] (Second Am. Compl. ¶ 2; Mem. in Supp., Ex. 6 at 1–2.) Jarratt, however, did not make that decision. Rather, the decision to transfer Plaintiff and fellow protestors was made by Robinson, the Chief of Corrections Operations for the VDOC. Furthermore, Plaintiff fails to advance any evidence from which a reasonable trier of fact could conclude that his protected First Amendment activity was a substantial or motivating factor in the decision to transfer him and his fellow protestors. Accordingly, Claim Three against Jarratt will be dismissed.

In Claim Four, Plaintiff contends that Jarratt violated his due process rights by transferring him to Red Onion. However, as previously mentioned, Jarratt did not transfer Plaintiff to Red Onion nor did he authorize that transfer. *See Coleman v. Bowden*, 797 F. App'x 422, 427 (11th Cir. 2019) (dismissing a retaliation claim against defendant official where plaintiff failed to allege that defendant official personally

---

[5] In his Second Amended Complaint, Plaintiff also complained that Jarratt turned off the floor fans and demanded that inmates return to their cells. (Second Am. Compl. ¶ 2.) The record demonstrates that these actions were taken not in response to any protected activity, but in an effort to maintain order during the precarious circumstances when NCC had lost power and numerous prisoners in Plaintiff's housing unit refused to obey the orders of prison staff.

participated in or caused the alleged retaliatory act).  Accordingly, Claim Four against

Jarratt will be dismissed.

## V.  Conclusion

All claims against Walker will be dismissed without prejudice.  Jarratt's Motion

for Summary Judgment (ECF No. 65) will be granted.  Claims Three and Four will be

dismissed against Jarratt.  Plaintiff's Petition for Judgment (ECF No. 68) will be denied.

An appropriate Final Order will accompany this Memorandum Opinion.

It is so ORDERED.

                                                       _____/s/_____
                                                       Henry E. Hudson
                                                       Senior United States District Judge

Date: Oct. 2, 2023
Richmond, Virginia